UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
RICHARD RICHARDSON,

                Plaintiff,

   -against-                                    **MEMORANDUM & ORDER**
                                                         17-CV-2479(PKC)(LB)

OLIVIA SIMMONS, FRANK PELGRAM,
and ANNETTE STEWART,

                Defendants.
----------------------------------------------------------X
PAMELA K. CHEN, United States District Judge:

Plaintiff Richard Richardson, appearing *pro se* and proceeding *in forma pauperis*, brings this action, pursuant to 42 U.S.C. § 1983 and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, against Defendants Olivia Simmons, Frank Pelgram, and Annette Stewart, in connection with an alleged delay in receiving his reduced fare MetroCard. For the reasons stated herein, the Court *sua sponte* dismisses Plaintiff's Amended Complaint.

### BACKGROUND

**I.    Relevant Facts**

On September 27, 2016, Plaintiff "turn[ed] in" his "disability metro half fare card" to the Manhattan office of the Metropolitan Transit Authority ("MTA") because it was malfunctioning. (Complaint ("Compl."), Dkt. 6, at 1.)[1] Defendant Pelgram, a New York City Transit Authority ("NYCTA")[2] employee, took Plaintiff's MetroCard and gave him a 30-day card until Plaintiff's new MetroCard could be mailed. (*Id.*) At some point, Plaintiff called the Brooklyn office of the

---

[1] All page numbers refer to the pagination generated by the CM/ECF system and not the document's internal pagination.

[2] The NYCTA "operate[s] under the umbrella of the Metropolitan Transit Authority[.]" *New York Urban League, Inc. v. State of N.Y.*, 71 F.3d 1031, 1033 (2d Cir. 1995).

MTA to ask about the status of his new MetroCard. He spoke to Defendant Steward, who told him that his new card was mailed on October 28, 2016. (*Id.*) On October 31, 2016, Plaintiff, who still had not received his new card, spoke to Steward again. Steward informed Plaintiff that his new MetroCard was at the Manhattan MTA office and that he could go and pick it up. (*Id.*)

That same day, Plaintiff went to the Manhattan MTA office and spoke with Defendant Simmons, who told Plaintiff to take a seat and wait until his name was called. Fifteen minutes later, Pelgram called Plaintiff's name and "said to [him] in a very nasty loud tone of voice . . . you are being investigated by the FBI for metro card swipe [sic]." (*Id.* at 2.)[3] Plaintiff then asked for a copy of his "metro card record sheet", which Pelgram refused to provide. (*Id.*) A week later, on November 4, 2016, Plaintiff called the Brooklyn MTA office and again spoke to Defendant Steward, who said that Plaintiff's MetroCard was "in the mail." (*Id.*) On January 3, 2017, Plaintiff went back to the Manhattan MTA office where he again spoke with Defendant Pelgram. Pelgram "said to [Plaintiff] with a big smile on his face you are being investigated by the FBI for swipe [sic] in all boro[ughs] of the New York State [sic]." (*Id.*)

Plaintiff states that he went a total of ten months without his MetroCard even though it "only takes . . . 3 weeks" to replace a malfunctioning card. (*Id.*) Plaintiff also argues that he should have been given additional temporary cards until the problem was corrected. (*Id.* at 3.) Additionally, Plaintiff argues that Defendants "didn't do [their] job" because they did not "[g]ive [him] any kind of documents showing that the FBI was investigat[ing] [him] on swipes" and refused to give Plaintiff a copy of his "MTA mal[]function record sheet . . . which by law under

---

[3] The Court notes, but does not consider, the fact that, according to Defendants, Plaintiff had his MetroCard deactivated after NYCTA discovered he was illegally using the card to sell rides. (Dkt. 40, at 1.)

2

the [ADA] they [are] supposed to." (*Id.*)  Plaintiff seeks a year's supply of unlimited half-fare cards and $50,000 in damages. (*Id.*)

## II. Procedural History

Plaintiff filed his initial complaint on April 20, 2017 (Dkt. 1); it was dismissed with for failure to state a claim, with leave to amend, on June 20, 2017 (Dkt. 5). On June 27, 2017, Plaintiff filed his Amended Complaint. (Dkt. 6.)

### STANDARD OF REVIEW

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Twombly*, 550 U.S. at 556). The "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citation omitted). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679 (citation omitted).

"In addressing the sufficiency of a complaint, [the Court] accept[s] as true all factual allegations and draw[s] from them all reasonable inferences; but [the Court is] not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013). "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal

quotation marks and citations omitted). At the same time, pursuant to the *in forma pauperis* statute, a district court must dismiss a case if the court determines that the complaint "is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

## DISCUSSION

### A. Section 1983

The Court construes the allegations in the Complaint to assert a claim pursuant to 42 U.S.C. § 1983 ("Section 1983"), which provides a cause of action for anyone subjected "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by a person acting under color of state law. 42 U.S.C. § 1983. Section 1983 itself "creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Wilson v. New York*, No 15-CV-5321(PKC)(CLP), 2015 WL 6438749, at *2 (E.D.N.Y. Oct. 22, 2015) (citing *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993)); *see also Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999). To state a claim under Section 1983, a plaintiff must plausibly allege that the defendant (a) acted under color of state law (b) to deprive the plaintiff of a right arising under the Constitution or federal law. *See* 42 U.S.C. § 1983. Moreover, a plaintiff must allege the defendant's direct or personal involvement in the alleged constitutional deprivation. *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010) (citing *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006)). A Section 1983 complaint that does not allege the personal involvement of a defendant fails as a matter of law. *See Johnson v. Barney*, 360 F. App'x 199, 201 (2d Cir. 2010) (summary order).

Plaintiff's allegations, as presently stated, do not adequately allege personal involvement under Section 1983. First, Plaintiff does not allege that Defendant Simmons participated in the alleged deprivation of his MetroCard. His sole allegation as to her is that he spoke with her at the

Manhattan MTA office and that she told him to take a seat until his name was called. (Compl. at 2.) Second, Plaintiff's allegations with respect to Defendant Pelgram are similarly insufficient as Pelgram only took Plaintiff's MetroCard when Plaintiff himself turned it in because it was malfunctioning. (*Id.* at 1.) Finally, although Plaintiff alleges that he spoke to Defendant Steward multiple times about the status of his new MetroCard, he does not allege that she prevented him from receiving it or that she herself had any authority to issue said MetroCard. (*Id.* at 1-3.)

Additionally, even if the Court construes Plaintiff's complaint as adequately alleging Defendants' personal involvement, Plaintiff's claim must be dismissed because he has neither a constitutional nor federal right to a MetroCard. Property interests "must rest on some 'legitimate claim of entitlement,' as distinguished from a mere 'abstract need or desire' or 'unilateral expectation' of the claimed interest." *Ganci v. New York City Transit Auth.*, 420 F. Supp. 2d 190, 197 (S.D.N.Y.), *aff'd*, 163 F. App'x 7 (2d Cir. 2005) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). In the case of Plaintiff's half-fare MetroCard, "the alleged property at stake is whatever bundle of rights is conferred upon [MetroCard] holders" and therefore, "the relationship [is] contractual in nature." *Id.* at 198-99. While "contract rights can give rise to constitutional entitlements . . . not *all* contracts between the government and a private party create property interests that warrant constitutional protection, at least not in the context of the Due Process Clause." *Id.* at 200; *see also Local 342, Long Island Public Service Employees, UMD, ILA, ALF–CIO v. Town Bd. of Town of Huntington,* 31 F.3d 1191, 1193-94 (2d Cir. 1994) ("[T]he type of interest a person has in the enforcement of an ordinary commercial contract often is qualitatively different from the interests the Supreme Court has thus far viewed as 'property' entitled to procedural due process protection." (citation and internal quotation marks omitted)). In this case, "the New York Legislature has granted the NYCTA broad discretion to modify the terms of its

contract with riders[;] . . . [s]uch broad discretion . . . is simply not consistent with a protected property interest under . . . the Due Process . . . Clause[.]" *Id.* (citing New York Public Authorities Law § 1204(5-a)); *see also Kelly Kare, Ltd. v. O'Rourke*, 930 F.2d 170, 175 (2d Cir. 1991) (holding that anytime a state statute, regulation, or contract vests in the state significant discretion over the continued conferral of a benefit, "it will be the rare case that the recipient will be able to establish an entitlement to that benefit"). Therefore, the Court finds that the rights at issue here are not "property" within the meaning of the Due Process Clause.

Finally, the Court finds that Plaintiff's Section 1983 claim must be dismissed "because there is no constitutional violation (and no available § 1983 action) when there is an adequate state post-deprivation procedure to remedy a random, arbitrary deprivation of property or liberty." *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 882 (2d Cir. 1996). The Second Circuit has held "that an Article 78 proceeding constitutes an adequate postdeprivation procedure under the Due Process Clause." *Id.* at 881. Therefore, even if Plaintiff had a protectable property and liberty interest, "because of the availability of an Article 78 proceeding, [Plaintiff] was not deprived of such property or liberty without due process of law." *Id.* at 882.

Therefore, Plaintiff's Section 1983 claim against Defendants is dismissed.[4]

**B. ADA**

To establish a prima facie case of discrimination under the ADA, a plaintiff must show the following: (1) plaintiff is a "qualified individual with a disability;" (2) plaintiff was "excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by [the] public entity;" and (3) "such exclusion or discrimination was due to

---

[4] To the extent Plaintiff is arguing that Defendants harmed him by not informing him of the so-called FBI investigation or providing him with the requested documentation, the Court can identify no affirmative duty owed by Defendants to Plaintiff and no cognizable constitutional claim under this theory.

[plaintiff's] disability." *B.C. v. Mount Vernon Sch. Dist.*, 837 F.3d 152, 158 (2d Cir. 2016) (citation and internal quotation marks omitted). Although Plaintiff states that there was a "violation of [his] disability civil rights" (Compl. at 3), Plaintiff does not allege any facts from which the Court can infer that he was deprived of his half-fare MetroCard on the basis of his disability. Therefore, Plaintiff's claim is dismissed.

## CONCLUSION

For the reasons stated herein, the Amended Complaint is dismissed. The Clerk of Court is respectfully requested to enter judgment and close the case accordingly.

SO ORDERED.

/s/ Pamela K. Chen
PAMELA K. CHEN
United States District Judge

Dated: April 10, 2018
      Brooklyn, New York